# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JONATHAN BRADY,

       Petitioner,

v.                                               Civil No. 00-656 LH/WWD

TIM LeMASTER, Warden,
New Mexico State Penitentiary

       Respondent.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION
### Proposed Findings

1. THIS MATTER comes before the Court upon Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, filed May 8, 2000. Mr. Brady ("Brady") is currently incarcerated and is represented by retained counsel. He is confined pursuant to the judgment, sentence and commitment of the Seventh Judicial District Court, in the Children's Court, County of Socorro; for the crimes of aggravated burglary; residential burglary; accessory to possession of a stolen vehicle, escape from the detention center; and breaking and entering. The state court imposed an actual sentence of approximately 15 years.

2. Petitioner raises the following grounds in his petition:[1]

(I) the stipulation of delinquency entered into by Petitioner was not a plea;

(II) Petitioner as a juvenile should not have been sentenced to 22 years where batteries were not aggravated; the sentence should have been vacated and Petitioner should have been re-sentenced;

---

[1] The ground enumerated as ground IV in the petition and supporting brief has been incorporated into the Court's discussion on grounds I and II, since the original ground IV revisited issues raised in the first two grounds.

(III)  the district court erred in failing to require the Corrections Department of the State of New Mexico to implement a mandatory alternative incarceration program under N.M.S.A. § 31-18-22 to which Petitioner was constitutionally entitled;

(IV)  that the 22-year sentence imposed on a 17 year-old first offender for an injury-free crime constitutes cruel and unusual punishment;

(V)  trial counsel was ineffective in waiving Petitioner's amenability to treatment as a juvenile after several hearings had been held on the issue while Petitioner was represented by former appointed counsel;

(VI) denial of right to speedy sentencing;

(VII)  denial of due process by inordinate delay in disposing of state habeas corpus petition.

(VIII)  Petitioner urges a cumulative error analysis.

### *BACKGROUND[2]*

3. In the summer of 1994, Jonathan Brady was visiting his cousin's family in Socorro, New Mexico.  He was 17 years old at the time.  He and his cousin, Anthony Todisco, broke into a house in Socorro in which no one was home.  They went through the house taking cash, jewelry and other items; smashed a gun case and took guns.

4.  A few nights later, they broke into another house, leaving thousands of dollars in damage behind.  At this house, they took more guns and some cash.  Their intention was to sell the guns in Albuquerque.[3]  No one was home at this residence either.  Brady and his cousin found truck keys in the bathroom and stole the pickup to which the keys belonged.  The two were arrested after a high speed chase.

---

[2]  These facts are taken from the state record proper ("RP") which are cited in the briefs.

[3]  There is some evidence that before they could sell the guns, they were stolen from Jonathan and his cousin.  T. 1, 4/1/96, 20.24 - 25.00.   There was also evidence that Brady was abusing drugs, specifically methamphetamine.

5.   Brady was charged in three separate cases with twenty counts stemming from his involvement in several burglaries, a high speed chase in a stolen vehicle, and escape. The charges were filed by petition in Children's Court, and the trial court held several preliminary hearings to determine the existence of probable cause to support the charges.

6.   On August 31, 1994, the day set for trial, Brady admitted committing six of the twenty counts with which he was charged:  two counts of aggravated burglary, one count of residential burglary, one count of accessory to possession of a stolen vehicle, one count of escape and one count of breaking and entering.  The state dismissed the remaining fourteen charges.

7.   Hearings were held to determine whether Brady was amenable to treatment as a juvenile, as required under N.M.S.A. 1978 § 32A-2-20(B).  During a continuance of the hearing pending authorization from the state Public Defender's Department for funds for expert to testify, defense counsel was allowed to withdraw from the case.  Petitioner's new counsel filed a Waiver of Hearing on Amenability to Treatment as a Juvenile, which Petitioner agreed to and signed.

8.   The trial court subsequently determined that Petitioner was a Youthful Offender as defined under the statute.  Brady was sentenced for a total of 25 years.  RP at 233.  The court denied a motion to vacate the Judgment, Sentence and Commitment because it determined that Petitioner had admitted to the charges voluntarily and knowingly.  However, recognizing that the Petitioner might have understood that his admission exposed him to a maximum penalty of only 22 years incarceration, the court amended the sentence to 22 years incarceration, suspending one-third of the sentence, for a total actual sentence of approximately 13 years incarceration.  RP at 269-273.

9.   Brady has exhausted the issues presented in the federal petition, with the exception of

one, in his direct appeal (Ans., Exs. C, E); in a motion for rehearing (Exs. F & G); in a motion for

sentence modification in the trial court, the denial of which he also appealed (Exs. I, J, K, L, O,

Q); and a state habeas petition (Exs. W, X, Y, Z).

10.  Respondent contends that part of Petitioner's ground IV (addressed here and in

Respondent's brief in the discussions on grounds I and II), where Petitioner challenges his

conviction based on U.S. v. Shuler, 181 F.3d 1188 (10th Cir. 1999), is not exhausted.

Nevertheless, it should be dismissed because it lacks merit.  See 28 U.S.C. § 2254(b)(2) (a district

court can deny a habeas petition on the merits, notwithstanding failure to exhaust).

### STANDARDS AND DISCUSSION

11.  Most of Petitioner's claims should be dismissed based on the state court findings.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),[4] federal courts are

forbidden from granting habeas relief with respect to any claim adjudicated on the merits in state

court unless the state court's adjudication of the claim: (1) "resulted in a decision that was

contrary to, or involved an unreasonable application of, clearly established federal law, as

determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was

based on an unreasonable determination of the facts in light of the evidence presented in the State

Court proceeding." 28 U.S.C. § 2254(d)(1) & (2).  A state court's factual findings are presumed

correct, unless rebutted by clear and convincing evidence. Id. § 2254(e)(1).

12.  Brady's claims of ineffective assistance of counsel are examined under the standard

set forth in Strickland v. Washington, 466 U.S. 668, 690-92 (1984): the petitioner must

---

[4]  Pub.L.No. 104-132, tit.I, sec. 104 (to be codified at 28 U.S.C. §§ 2254(d),(e) (April 24, 1996).

demonstrate both that his trial attorney's performance fell below an objective standard of reasonableness and that he was prejudiced by the deficient representation. Because a petitioner must establish both of these prongs, a court can review either prong of this test in determining ineffective assistance claims. Id., 466 U.S. at 697; Foster v. Ward et al.,182 F.3d 1177 (10th Cir. 1999).

***Ground I*** [5]

13. Petitioner contends that the stipulation of delinquency entered into by Petitioner was not a plea because of his status as a juvenile.

14. Petitioner contends that his admissions went to a finding of delinquency rather than an adjudication of guilt. However, that contention is based on a state statute which was related to the disposition of Petitioner's case, N.M.S.A. 32A-2-20(A) & B. [6] Inasmuch as he challenges the

---

[5] Tape citations ("T") to the state record proper are to a Sony Model BM-75, with approximately 46 counters per tape side.

[6] The statute governing the disposition of a youthful offender, N.M.S.A. 1978 § 32A-2-20, states in part:
A. The court has the discretion to invoke either an adult sentence or juvenile sanctions on a youthful offender. The children's court attorney shall file a notice of intent to invoke an adult sentence within ten working days of the filing of the petition, provided that the court may extend the time for filing of the notice of intent to invoke an adult sentence, for good cause shown, prior to the adjudicatory hearing. A preliminary hearing by the court or a hearing before a grand jury shall be held, within ten days after the filing of the intent to invoke an adult sentence, to determine whether probable cause exists to support the allegations contained in the petition.
 B. If the children's court attorney has filed a notice of intent to invoke an  adult sentence and the child is adjudicated as a youthful offender, the court shall make the following findings in order to invoke an adult sentence:
   (1) the child is not amenable to treatment or rehabilitation as a child in available facilities; and
   (2) the child is not eligible for commitment to an institution for the developmentally disabled or mentally disordered.
 C. In making the findings set forth in Subsection B of this section, the judge shall consider the following factors:
   (1) the seriousness of the alleged offense;

statute, Petitioner's allegations are not cognizable under federal habeas, since federal habeas relief is not available for errors in the interpretation of state sentencing law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).   Although a state court's arbitrary disregard of the state sentencing law and imposition of an unauthorized sentence may violate the defendant's due process rights, see Hicks v. Oklahoma, 447 U.S. 343, 346 (1980), I find that this did not happen here.

15.   New Mexico Children's Court may impose an adult sentence after certain determinations are made and certain procedures followed.   A trial court may impose an adult sentence on a defendant who is considered to be a youthful offender[7] at the court's discretion unless the child is amenable to treatment or because of a developmental disorder.  § 32A-2-20(B) (1993).  Determination regarding amenability to treatment as a juvenile is done on a case by case basis and involves evaluations by outside experts as well as the court's balancing of the factors under the statute.  See n. 6, above.

16. There is no merit to Petitioner's implied argument that the sentencing court did not have jurisdiction to impose an adult sentence on Petitioner.   In enacting § 32A-2-20(B), the state legislature made a provision for treating some juveniles as adults for the purposes of sentencing. Further,  the state statutes and the process set out therein do not violate a defendant's

---

(2) whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner;
(3) whether a firearm was used to commit the alleged offense;
(4) whether the alleged offense was against persons or against property, greater weight being given to offenses against persons, especially if personal injury resulted; . . .

[7]  Under N.M.S.A. § 32A-2-3(I)(1993), a youthful offender is a delinquent child who committed the delinquent act between the age of fourteen and eighteen years, when the delinquent act was one of several specifically listed crimes.  Aggravated battery, the commission of which Petitioner admitted, is one of the listed crimes.

constitutional rights. A state court's evaluation and balancing under 32A-2-20(B) & C) (1993) to determine amenability to treatment satisfies federal due process concerns.

17. Under New Mexico law, the statements Brady made were admissions that he committed specific delinquent acts which characterized him as a youthful offender. After the trial court advised Brady about the purpose for the admissions hearing held on August 31, 1994, and describing the rights he was giving up by virtue of the admissions he was making, Brady admitted separately to committing the offenses of aggravated burglary on two residences; residential burglary; he admitted to being an accessory to possession of a stolen a vehicle; and to escaping from jail. T.2, 8/31/94, 3.13 - 5.00.

18. When the trial court accepted those admissions, T.2, 6.30 - 6.40, Brady was adjudicated as a youthful offender, which in turn triggered the court's duty to determine whether Petitioner was amenable to treatment as juvenile under the state statute before the imposition of an adult sentence could be considered.

19. Thus, contrary to Petitioner's contentions, these admissions constituted a plea of guilty. During the August 31st hearing, the trial judge referred to what was taking place as a "plea." T.1, 19.36 - 19.46 (the "plea the state has provided at this time"); 21.00-21.15 ("plea to everything"; "enter our pleas."). The judge acknowledged that the hearing would resolve the adjudication, leaving only the sentencing to be addressed at a future time, after the forensic (amenability to treatment) was completed. T.1, 20.25 - 29.38. Brady was told that in exchange for making these admissions, the state would agree to dismiss some charges. T.1, 33.44- 33.51.

20. Brady would have a claim that is cognizable under federal habeas if his admissions were involuntary. However, based on a review of the state record, I find that his admissions

7

were voluntary.

21. Brady was advised about his right to trial and what he was giving up in making the admissions to the crimes. T.1, 38.88 - 39.23. In response to the judge's inquiry, Brady stated that he had not received any threats or inducement to make the admissions, nor had he been made any promises as to sentences or disposition except to possible exposure to a maximum of 22 years of an adult sentence. T. 1, 42.30 - 43.49. Brady's statements indicate that he made the admissions knowingly and voluntarily, and he cannot now recant them. See Tollett v. Henderson, 411 U.S. 258 (1973).

22. Brady also claims that his plea is involuntary because at the time Brady made his admissions, it was unclear whether he would be sentenced as a juvenile or as an adult. Under the statute which governed the proceedings, there is no way Brady would have known at the time which way he would be sentenced. Adjudication as a youthful offender, whether by plea (through admission) or by trial, exposes a juvenile defendant to the *possibility* of an adult sentence - unless and until the court determines amenability to treatment under § 32-2A-20. Because this inquiry is not made until after youthful offender status is determined, Petitioner would not have known whether or not the Court could or would sentence him as an adult at the time of the August 31, 1994 hearing. Nevertheless, he was apprised of the possibility of exposure to an adult sentence as well as the range. T. 1, 7.20 - 7.25;[8] 20.25 - 20.38; 22.00.

23. The state court of appeals addressed this issue. In its analysis, the court noted the "thoroughness of the plea hearing" [the August 31, 1994 hearing] and noted that Petitioner knew

_____

[8] Brady's total exposure ranged from 2 years in Springer as a juvenile to an adult sentence of 22 years (9 years for each of two counts of aggravated burglary, 3 years for residential burglary; and 22.5 months as an accessory to crime involving stolen vehicle).

of the possibility of the imposition of an adult sentence, and knew the maximum range. He was also informed that the sentencing would be at the court's discretion. The court affirmed the conviction and sentence.[9]

24. The state court's findings on this issue are not an unreasonable application of the facts to clearly established federal law. Based on those findings as well as findings based on a review of the state record proper, I find that relief should be denied on this ground.

***Ground II***

25. Petitioner contends that he should not have been sentenced to 22 years where the batteries were not aggravated, and that the sentence should have been vacated and Petitioner should have been re-sentenced. Petitioner bases his position on the case concerning his co-defendant, State v. Todisco, 129 N.M. 310 (Ct.App. 2000), wherein the court held that the trial court had erred in treating aggravated and residential burglaries "as crimes against persons rather than against property." 129 N.M. 310.

26. When Petitioner first raised this motion in state court, he argued that Todsico stood for the proposition that the burglaries were not aggravated burglaries. Ex. N at 7 (docketing statement); Ex. O at 1 (calendar notice). Petitioner later conceded that the court of appeals did not determine that the burglaries were not aggravated but instead argued that Brady should receive a new amenability determination in light of Todisco's holding. Ex. P at 2 (opposition to calendar notice). The court of appeals rejected the argument, noting that Petitioner had "waived

_____

[9] The court of appeals found, however, that Brady had been misinformed as to the maximum range. Although the maximum was in fact 25 years, he was told that maximum exposure was 22½. However, the error was cured when the judge amended the sentence to 22½ years. Ex. E at 6.

his amenability to treatment, thereby agreeing to be sentenced as an adult." <u>Ex. Q at 2</u>.

27. The court also found that whether Brady should receive a new amenability determination was more appropriately presented in a habeas petition, since the matter concerned the court's jurisdiction to sentence Brady as an adult. Ex. Q at 2-3. Construing this issue as a due process claim, I find that the state court findings are consistent with a reasoned decision based on clearly established federal law which protects an individual's due process rights. <u>See Martin v. Kaiser</u>, 907 F.2d 931, 934 (10th Cir. 1990); <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991) (a federal habeas corpus court's review is limited to deciding whether a state court conviction violated either the United States Constitution, federal law or treaty).

28. <u>Todisco</u> did not apply to Petitioner. <u>Todisco</u> simply provides that, in considering the statutory factors for determining amenability to treatment, a court cannot consider a crime of aggravated or residential burglary (to which Petitioner admitted guilt), as a crime against persons, but only against property. NMSA § 32A-2-20(C)(3) ("One of the statutory factors examined in determining amenability to treatment is "whether the alleged offense was against persons or against property, greater weight being given to offenses against persons, especially if personal injury resulted. . . .").

29. Petitioner urges that the trial court should have reweighed the seven factors, given the change in how aggravated or residential burglary should be considered. However, as Respondent points out, the trial court did not need to consider the factors listed in § 42A-2-20(C) because Petitioner waived the amenability determination.

30. Instead, the trial court considered imposing the same sentence that was imposed on

Brady's co-defendant and cousin, Anthony Todisco.[10]  The judge considered incarceration as well as alternatives, including probation, a deferred sentence, and rehabilitation programs.  T.3, 4/1/96, 43.45-end.  After reviewing the results of extensive psychological testing and evaluations done and after listening to lengthy testimony by members of Brady's family on his behalf as well as from the victims, the court imposed a sentence with a total exposure of 25 years.

31.  The sentence was reduced by about one-third of the statutorily authorized maximum, based on presentence confinement and mitigating circumstances.[11]  The trial judge noted that with good behavior, Brady could anticipate release in his mid-20's.  Thus, there is no merit to Petitioner's contention that the trial court should have reweighed the factors related to an amenability determination.

32.  Petitioner also contends that Brady had a constitutionally protected interest in his status as a juvenile, without presenting any case which would support the contention that juvenile status is a separately recognized fundamental right.  The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity.  Albright v. Oliver, 510 U.S. 266, 114 S.Ct. 807, 812 (1994) (citation omitted); See Gehl Group v. Koby, 63 F.3d 1528, 1538-39 (10th Cir. 1995).

33.  Even assuming his status as a juvenile gives rise to due process protection, the process under which Brady received an adult sentence for crimes committed while he was still a

---

[10]  On remand, the state court reevaluated the factors for amenability and again came to the conclusion that Todisco was not reasonably likely to be rehabilitated.  129 N.M. at 313.

[11]  The court noted Brady's age, the fact that no one had been hurt in the crimes, the fact that he had worked toward and obtained a GED diploma on his own, had been cooperative and candid with police and evaluators, and had written on his own letters of apology to the victims of his burglary crimes.  T. 4, 4/1/96, 10.19 to end.

juvenile does not violate his federal due process rights, as discussed above.   See Farthing v. City

of Shawnee, 39 F.3d 1131, 1135 (10th Cir.1994); see also Cleveland Bd. of Educ. v. Loudermill,

470 U.S. 532, 541, 105 (1995) (determination of whether the government has deprived an

individual of his due process rights involves asking whether the individual  possessed a protected

interest giving rise to due process protection and whether the government afforded the individual

an appropriate level of process).[12]  The process by which amenability to treatment as a juvenile is

determined afforded Petitioner's juvenile status ample protection under federal due process.

34.   The last point Petitioner makes under this issue is also without merit because he relies

on a case, United States v. Shuler, 181 F.3d 1188 (10th Cir. 1999), which is irrelevant to Brady's

situation.  Shuler examines a federal statute, 18 U.S.C. § 924, which provides for an enhanced

sentence when a firearm is used or carried during and in relation to a crime of violence.

Petitioner was charged with aggravated burglary under a *state* statute.  Therefore, the question of

whether the burglaries were "aggravated" is a matter of state law which is not cognizable under

federal habeas.   Relief on this ground should be denied.

### Ground III

35.   Petitioner claims that the district court erred in failing to require the Corrections

Department of the State of New Mexico to implement a mandatory alternative incarceration

program under N.M.S.A. § 31-18-22 to which Petitioner was constitutionally entitled.   Under

that statute, the state Department of Corrections is required to develop and implement a "special

incarceration alternative program that offers substance abuse counseling and treatment as well as

---

[12]  The case cited by Petitioner does not support his position on this point.  It involves
sentencing jurisdiction of a juvenile who was transferred to adult status under a federal transfer
statute, 18 U.S.C. § 5032.

education for certain offenders who qualify under the statute. [13]

36.    The state court of appeals addressed the issue and found that the statute did not "mandate the development of a program for an individual inmate."  Nor did the statute mean that Brady was "entitled to have a special program developed for him alone." Ex. Q at 3-4.   The court noted that Brady was not alleging that the state had not set up such programs, nor that he was not screened for such programs.

37.    After the appeal order was entered, Petitioner disagreed with the court of appeals characterization of his claim, stating that he was challenging the corrections department's failure to implement regulations governing the placement of inmates in such programs as well as the non-existence of these alternative programs.  Ans., Ex. R (Motion for Rehearing).   The court of appeals rejected Petitioner's argument without comment. Ex. S.[14]

38.    Even assuming that this specific claim was presented to the state court and not procedurally defaulted, it would not be entitled to federal habeas relief because it concerns a violation of a state statute.   The failure of the Department of Corrections to comply with a state statute regarding an alternative program for offenders does not render Petitioner's sentence

---

[13]  The statute provides in part:  "(A)  The corrections department shall develop and implement a special incarceration alternative program for certain adult male and adult female felony offenders pursuant to this section.  The program shall provide substance abuse counseling and treatment, general education diploma preparatory courses, manual labor assignments, physical training and drills, training in decision making and personal development and pre-release skills training.  The programs shall be conducted in a strict disciplinary environment.  Emphasis shall be given to rehabilitation of alcohol and substance abusers. The corrections department shall require that program participants complete a structured, ninety-day program."

[14]  Brady's claim was that "The Department of Corrections has not, to date, attempted to implement any 'special incarceration alternative program' for Jonathan, within the meaning [of] Section 31-18-22." Ex. I at 3.

fundamentally unfair.

39. Under the statute, placement in the program is discretionary. The corrections department institutes a screening process within thirty days of sentencing to determine an individual's suitability for the program. If the sentencing court accepts the department's recommendation, it will resentence the offender. § 31-18-22(D). If the participant successfully completes the program, the remainder of that individual's sentence "shall be suspended and the offender shall be placed on probation for the remainder of the term." § 31-18-22(D). The statute does not create a right or entitlement to placement in the program, so that Petitioner has alleged neither a violation of the state statute nor a violation of the federal constitution. Therefore, relief should be denied on this ground.

***Ground IV***

40. Petitioner contends that the 22-year sentence imposed on a 17 year-old first offender for an injury-free crime constitutes cruel and unusual punishment.

41. The Tenth Circuit has set out the test for an Eighth Amendment claim of cruel and unusual punishment in <u>Hawkins v. Hargett</u>, 200 F.3d 1279, 1282 (10th Cir.1999). The court based its holding on the recent decision in <u>Harmelin v. Michigan</u>, 501 U.S. 957 (1992) which examined the three-pronged analysis for reviewing Eighth Amendment proportionality claims established in <u>Solem v. Helm</u>, 463 U.S. 277, 292 (1983). Under <u>Hawkins</u>, the court looks first at the relation of the sentence to Brady's crimes. If no"gross disproportionality" is found, the court does not proceed to a comparative analysis.

42. Looking at the factors considered by the <u>Hawkins</u> court, I find that Petitioner's sentence does not violate the Eighth Amendment. Although Brady was 17 years old at the time

he committed the crimes, he caused substantial damage and harm to the victims and their family. He and his cousin left behind thousands of dollars in damage in two of the homes, as well as considerable emotional hardship for the victims and their families. The son of one of the victims (Fleming) testified that over $92,000 in insurance claims were made ($8,000 damage to property and $7,000 in damage to vehicles) and that the insurance company would no longer insure his mother as a result of the incident. T. 1, 4/1/96, 21.20 to end; RP at 225.

43. Mementos that had sentimental as well as monetary value were either stolen or destroyed, and the insurer was challenging claims for some of them: for example, a violin that had belonged to the father of one of the victims when he played in the New York Symphony was missing, and a mink coat was torn and left in shreds. Id.

44. There was also testimony by the police officer who chased the stolen vehicle that Brady and his cousin attempted to run him off the road, placing his life in danger. Tape 1, 4/1/96, RP at 226 at 1429. As in Hawkins, Petitioner's age did not attenuate his culpability for his crimes, given the extreme amount of harm caused by his crimes.

45. Eighth Amendment analysis "focuses on the sentence imposed for each specific crime, not the cumulative sentence for multiple crimes." Hawkins, at 1284-85 & n. 5. While the maximum exposure of 25 years might appear unusual, the sentence is not cruel and unusual punishment because the sentence imposed on each offense Brady committed is within the statutory limit. Id. (sentences imposed within the statutory limits are generally not regarded as cruel and unusual punishment) (citation omitted).[15]

---

[15] The sentences were broken down as follows: escape from jail - 1.5 years; breaking and entering - 1.5 years; two counts of aggravated burglary - 9 years each; residential burglary - 3 years; and possession of stolen vehicle - about 1 year. T.1, 4/1/96, .38-3.00.

46. Moreover, the trial court reduced the sentence by more than 600 days in presentence confinement, and noted at the end of the proceeding that with good behavior, Brady could anticipate release as early as in his mid-20's. T.4, 15.00. Thus, I find no merit to Petitioner's Eighth Amendment claim. Relief should be denied on this ground.

***Ground V***

47. Petitioner contends that trial counsel was ineffective in waiving Petitioner's amenability to treatment as a juvenile after several hearings had been held on the issue while Petitioner was represented by former appointed counsel.

48. By the time Petitioner waived the amenability determination, the testing and evaluation had been completed, and reports were in from the state's expert (Dr. Zussman) as well as Petitioner's (Dr. Aubrey). Two hearings had already been held. RP at 159-171 (May 17, 1995); and RP at 183-190 (June 12, 1995). The hearings were continued in order to obtain funds for the court presentation of Dr. Aubrey's testimony, although his evaluation and reports had already been completed and submitted to the Court. At that time, defense counsel filed a motion to withdraw, which the court granted.[16] RP at 207.

49. Petitioner's new counsel filed a Waiver of Hearing on Amenability to Treatment as a Juvenile, which Brady signed. RP at 208, 211.

50. In examining counsel's performance, we focus on "not what is prudent or appropriate,

---

[16] According to defense counsel, funds were not available for the court presentation of the forensic evaluation, despite his repeated attempts to obtain those funds. Trying to get funding for her son's case, Brady's mother, who lived in California, had complained to the ACLU, federal legislators in her state, and the New Mexico state bar, to no avail. She eventually blamed counsel for failing to obtain these funds and for not being able to "move the case along." T. 1 of 1, 4/1/96, 5.41-10.15.

but only what is constitutionally compelled." United States v. Cronic, 466 U.S. 648, 665 n. 38 (1984), cited in Sherrill v. Hargett, 184 F.3d 1172, 1175 Cir. 1999).

51.  Petitioner does not specify how counsel was deficient in filing the waiver, nor do I find any.  All the information that would have been presented in a third hearing had been completed, and was before the Court at the time of sentencing.

52.  The sentencing court carefully went through all of the reports and "well-recognized" testing, T. 3, 4/1/96, 30.04, weighing them against various sentencing options.  The judge noted the substantial amount of damages, and that both experts did not believe Brady was a candidate for juvenile treatment.  The reports stated that Brady was "markedly antisocial . . . for someone so young," and that he would "continue in the same vein and behavior that has gotten him into trouble in the past and is unlikely to learn or profit from this experience."  T.3, 39.12.

53.  Brady was seen as lacking remorse, by being "indifferent to or rationalizing having hurt, mistreated or stolen from another" and that he exhibited "reckless disregard for the safety of self and others, and is consistently irresponsible."  T. 3, 43.00-43.23.   His criminal acts were viewed as "adult-kinds of criminal acts," with behavior that resembled those of an adult rather than a juvenile.  T. 3, 34.10.

54.  The sentencing court clearly considered Brady's amenability to treatment, noting that it was not saying Brady would not be able to be rehabilitated, but rather that he would not be amenable to treatment as a juvenile, which was distinguished as the relevant question.  T. 3, 34.58.  In fact, although both experts opined that Brady was a poor candidate for therapy or treatment as a juvenile, both recommended therapy for Brady's personality disorder and drug and alcohol treatment while incarcerated, "if or when amenable."  T. 3, 43.48- 44.05.

55. Thus, despite the fact that Brady technically waived his amenability determination, the court nevertheless still carefully considered the option. I do not find defense counsel's conduct in filing a waiver of amenability to treatment as a juvenile to be deficient where even the Petitioner's expert found that Brady was not amenable to the treatment.

56. Even assuming that counsel was deficient, Petitioner cannot show that he was prejudiced by his counsel's conduct in advising him to waive the amenability determination. Any reliance on the Todisco case is again misplaced, since the court's reexamination of the statutory amenability factors found that Todisco was *not* amenable to treatment on remand. Therefore, Petitioner cannot claim any basis for requiring the court to reexamine the factors in his case, or that he is prejudiced by the court's failure to do so.

57. Further, given the Court's thorough inquiry into Brady's offenses against the backdrop of the evaluations and reports, there is no basis for an argument that the waiver prejudiced his case and that he probably would have been determined amenable to treatment. Relief should be denied on this ground.

### Ground VI

58. Petitioner claims that he was denied the right to speedy sentencing under the sixth amendment. Respondent offers several bases for its position that this ground is without merit, each of which is sufficient to deny relief.

### Procedural default

59. Brady did not raise the speedy sentencing claim on direct appeal, nor in his state habeas petition, nor otherwise allow the state court to address the issue. Ans., Exs. N & W. He presented the issue relating to delay in sentencing for the first time when he filed his Petition for

Writ of Certiorari in the state supreme court.  Ex. Y.  The petition was summarily dismissed.[17]

60.  I agree with Respondent that the issue is procedurally defaulted.  Consideration of the issue on appeal to the supreme court was precluded by the fact that it had not been raised in the state habeas petition in the district court.  See N.M.R.A. 2001, Rule 12-216;[18] see also Shelley v. Norris, 73 N.M. 148, 386 P.2d 243 (1963) (mind of trial court must be clearly alerted to a claimed error in order to preserve it for appeal; questions not so presented to the trial court cannot be raised for the first time on appeal).  Nor can Petitioner present this claim to the state court seeking habeas relief.  New Mexico state courts will not consider any issues raised in a second post-conviction proceeding which could have been raised in the first proceeding.  State v. Gillihan, 86 N.M. 439, 440 (1974).

*Denial on the merits*

61.  Even assuming that this issue was not procedurally defaulted, it should be dismissed on its merits under the analysis for speedy trial claims articulated in Barker v. Wingo, 407 U.S.

---

[17]  The order included dismissal of four other issues that had been previously raised in state court.  Ex. W, Y.  Procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case "clearly and expressly states that its judgment rests on a state procedural bar."  Harris v. Reed, 489 U.S. 255 (1989).  However, this rule does not apply here where the state supreme court summarily dismissed the petition.  Nor is there any state court judgment that previously addressed the issue and which can be said to provide the last reasoned state court decision.  See, Ylst v. Nunnemaker, 501 U.S. 797, 803-806 (1991) (applying "look through" rule to last reasoned state court decision).

[18]  Rule 12-216 states in part: "(Preserving questions for review).  To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked. . .
B. Exceptions. This rule shall not preclude the appellate court from considering jurisdictional questions or, in its discretion, questions involving. . .  (2) fundamental error or fundamental rights of a party."  As Respondent notes, Petitioner did not seek review of the speedy sentencing claim for fundamental error, nor do I find any.

514 (1972).   In determining whether a delay in sentencing violates Brady's sixth amendment rights, I must consider the length of delay, reason for delay, Brady's assertion of his right, and any prejudice to him.   Perez v. Sullivan, 793 F.2d 249, 253-54 (10th Cir.1986) (noting that Barker analysis is applied to speedy sentencing claims).   However, for post-conviction (sentencing) claims, the necessity of showing substantial prejudice dominates the four-part balancing test.   At 256.

62.   The threshold factor to consider is the length of the delay.   United States v. Dirden, 38 F.3d 1131, 1137 (10th Cir.1994).   Inquiry into the other factors is necessary only if the period of delay is "presumptively prejudicial."   Id., 38 F.3d at 1137.

63.   Respondent urges the Court to examine the time period from the trial court's determination of amenability to sentencing as the relevant period, since Brady could not be sentenced prior to that determination.   The court determined that Petitioner was not amenable to treatment as juvenile on November 15, 1995.   RP at 213.   Brady was sentenced on April 1, 1996, less than five months later.   I do not find that period of time to be presumptively prejudicial such as to trigger a Barker analysis.   See, e.g., Perez v. Sullivan, 793 F.2d 249, 254 (10th Cir.1986) (citing numerous cases).

64. Brady's admissions were made on the day set for trial, August 31, 1994.   Prior to the first amenability hearing held on May 17, 1995, Petitioner was evaluated by Dr. Zussman on September 12, 1994.   He asked for, and received a continuance, for an evaluation by his own expert Dr. Aubrey, who evaluated Brady at different times in January, February and March of 1995. RP at 142, 144, 146, 147.   By April, 1995, Dr. Aubrey needed additional time to complete the evaluation.   RP at 148.

65. The trial court continued the amenability hearing on June 12, 1995. The determination could not be completed after the June 12th date, and the proceeding was again continued and reset for July 21, 1995, and re-scheduled for August 18, 1995. Shortly afterward, Petitioner's counsel moved to withdraw and Petitioner joined in the motion at a hearing on the motion. RP at 204, 2-05, T. 1 of 1, 4/1/96, 3.08-20.00.

66. Petitioner's new counsel filed a waiver of determination of amenability on November 9, 1995. RP at 211. A few days later, the trial court entered an order finding Petitioner non-amenable and ordered a pre-sentence report from the adult probation office. RP at 213-14. The time period between Brady's admissions and the first amenability hearing was under 9 months, again not sufficient to warrant proceeding with a full Barker analysis.

67. However, this claim would fail under a full Barker analysis. Based on the above chronology, the reasons for delay were for the benefit of the Petitioner: granting Petitioner's request for an independent evaluation by Dr. Aubrey; the trial court's attempt to hold a thorough hearing on the issue and consideration of withdrawal of counsel, which petitioner had jointly requested. These delays were thus "justifiable and proper." See Perez at 254 (citing Barker, 407 U.S. at 531 n. 32).

68. Following the trial court's determination of non-amenability on November 15, 1995, Petitioner himself sought continuances of the sentencing hearing in order to obtain a diagnostic evaluation. RP at 216. The motion for evaluation was filed December 15, 1995. The pleading states that "Defendant understands that his submitting to a diagnostic evaluation will delay his ultimate sentencing in the instant case by at least the 45 day period in which he will remain at the Western New Mexico Correctional Facility for his diagnostic evaluation." RP at 216. Petitioner

was sentenced less than four months after his request for a diagnostic evaluation.

69. The last two factors in a <u>Barker</u> analysis -- assertion of the right by Petitioner and prejudice -- also balance against Brady. As stated above, Petitioner never raised a speedy sentencing issue in the trial court, nor post-conviction, until his petition for writ of certiorari in the New Mexico Supreme Court.

70. Nor did the passage of time have an impact on whether the trial court sentenced Petitioner as a juvenile. As discussed above, the delay was attributable largely *because* the court was attempting to determine Petitioner's amenability to treatment. Thus, Brady's allegations of prejudice weigh in favor of the state.

71. Relief on this issue should be denied.

### *Ground VII*

72. Petitioner contends that he was denied due process by inordinate delay in disposing of his state habeas corpus petition. Brady bases this contention on N.M.R.A. 2001, Rule 5-802(E), which provides that "the court shall order the respondent to file a response to the petition" if the court has not ordered summary dismissal withing 30 days after acceptance of the petition.

73. As noted above, Brady has no viable claim under federal habeas corpus for a violation of a state procedural rule unless he can show a violation of due process rights under the federal constitution. Unreasonable delays in the processing of a habeas petition may deny the petitioner constitutional due process. <u>See</u> <u>Jones v. Shell</u>, 572 F.2d 1278 (8th Cir. 1978).

74. Brady filed his state habeas corpus petition on December 11, 1998. <u>Ans., Ex. W</u>. The state denied the petition on April 3, 2000, <u>Ex. X</u>, a period of fourteen months. However, as Respondent notes, at the time Brady filed his state habeas petition, Brady's appeal from the denial

of his motion for sentence modification was still pending on his request for rehearing in the state court of appeals. The order denying the rehearing was entered January 29, 1999, leaving a period of approximately two months and five days between the time the state court of appeals issued its order and the time the district court denied Brady's state habeas petition. Exs. R & S.

75. Although the state court's treatment of Petitioner's habeas petition was not timely under the express provisions of the statutes, it does not rise to a level of a violation of federal due process. I find that the delay was not fundamentally unfair, nor did it prejudice him.

76. Petitioner cites to two cases which are inapposite and unhelpful to his position. In Jones v. Shell, 572 F.2d 1278 (8th Cir. 1978), the court found a denial of due process, based on what it saw was a "flagrant violation of a mandate" requiring action by the district court following a remand order. The circuit court ordered that the state submit a response to an issue which was part of the initial petition but had never been addressed by the district court, and also ordered "immediate" review by the district court. At 1280. None of the facts in the Jones case occurred here.

77. In Cariso v. Sullivan, 12 N.M. 623 (1991), although the state supreme court noted there was an inordinate delay in the processing of the habeas petition, the delay was not entirely attributable to the hearing court, but also to the state's repeated failure to respond to the petition. However, the district court considered dismissal for inactivity, and never issued a ruling until five years after the habeas petition was initially filed, at which point the court summarily dismissed the petition. At 625-26. Such protracted proceedings did not exist in Brady's case, and the court's ruling was made within a much shorter time, even when calculated at its longest.

78. Brady's claim is ultimately doomed because he cannot show any prejudice from the

state court's delay in disposing his petition. See Simpson v. Ortiz, 995 F.2d 606 (5th Cir. 1993) (citing Clark v. Maggio, 737 F.2d 471, 475-76 (5th Cir.1984) ( "[W]e do not grant a writ of habeas corpus in every instance in which the state has failed to conform to constitutional requirements"), cert. denied, 470 U.S. 1055, 105 S.Ct. 1761, 84 L.Ed.2d 823 (1985)).

79. Because I am not persuaded that the delay in disposing of Brady's state habeas petition was unreasonable, and because he has not shown any prejudice as a result of the delay, I find that the claim has no merit and relief on this issue should be denied.

### Ground VIII

80. Petitioner urges the Court to conduct a cumulative error analysis. However, I find no error in any of the grounds raised in the petition. Therefore, the analysis is unnecessary. See Jackson v. Shanks, 143 F.3d 1313 (10th Cir. 1998) (court may evaluate only the cumulative effect of matters determined to be error).

81. In sum, I find that relief should be denied on all of Petitioner's claims raised in his federal habeas petition.

### Recommendation

I recommend that Petitioner's application for Writ of Habeas Corpus be DENIED and that this cause be DISMISSED WITH PREJUDICE IN ITS ENTIRETY.

Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections with the clerk of

the district court within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations.  If no objections are filed, no appellate review will be allowed.

UNITED STATES MAGISTRATE JUDGE